◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT CHAMBERLIN and JAMES TUNSTALL, Appellants◼

In *People v Tunstall* (63 NY2d 1, 9, *supra),* the Court of Appeals listed seven factors that the hearing court was to take into consideration upon remittitur. In a well-reasoned decision Justice Felig reviewed each of these factors in the context of this case as follows:

(1) *The amount of confidence the victim had in her initial recollections prior to being hypnotized:*

The victim unequivocally identified the defendants as the perpetrators several times prior to being hypnotized. Based upon these identifications, and the confidence revealed by the victim in her prehypnosis interview and during the course of the hypnosis hearing, the court was satisfied that the victim demonstrated a high degree of confidence in her initial recollections prior to being hypnotized;

(2) *The extent of the victim's belief in the ability of hypnosis to yield the truth:*

It was established through her hearing testimony that the victim, although aware that she was being hypnotized in an attempt to develop additional information, was skeptical of the effectiveness of hypnosis and considered the session to be a waste of time. She was, in fact, a reluctant participant in the procedure. Thus the court concluded that the victim had a minimal belief in the effectiveness of hypnosis, and that she was not overly susceptible to the inherent risks stemming from such a belief;

(3) *The degree to which the victim was hypnotized:*

Although the depth of hypnosis was not tested at the time the victim was hypnotized, based upon a viewing of the videotape of the hypnotic session the expert witnesses for the People were able to proffer the opinion that the victim was at best only lightly hypnotized. They provided the court with a reasonable basis for their beliefs, and thus the court concluded that the danger of enhanced confidence was minimal;

(4) *The length of the hypnotic session:*

All the expert witnesses agreed that length of the hypnotic session was not extraordinary. Therefore, this factor was given no special significance;

(5) *The type and nature of the questioning employed:*

Although the hypnotist did not follow the standards proposed by leading experts in this area *(see, State v Hurd,* 86 NJ 525, 432 A2d 86, 96), and did ask many suggestive and leading questions, the victim repeatedly rejected these suggestions and recalled little more than she had prior to being hypnotized. After reviewing the transcript of the hypnotic session the court adopted the conclusion of the People's experts to the effect that, based upon a review of the totality of the circumstances, the nature and type of questioning employed was not unduly suggestive;

(6) *The effectiveness of the hypnosis in yielding additional details:*

Although the victim did recall several additional minor details regarding the description of the perpetrators while under hypnosis, these details were not, for the most part, recalled by her at trial, and, in any event, were not significant *(see, People v Tunstall,* 63 NY2d 1, *supra).* Thus the court concluded that "there was a dearth of important details elicited during hypnosis and recalled at the trial" *(People v Tunstall,* 133 Misc 2d 640, 655, *supra);*

(7) *Any other factors which the court may deem important based upon the specific facts and circumstances of the case.*

Justice Felig found significant the fact that six months had passed between the time the hypnotic session was conducted and the time the victim testified at the trial, as the expert testimony indicated that the passage of time diminishes the effect of any artificially induced certainty. Secondly, the court took into account the fact that only one hypnotic session was conducted. Finally, the court considered the relative qualifications of the experts who testified at the hearing. The court gave little weight to the opinions of the experts who testified on the defendants' behalf. However, we note that it is the prerogative of the trier of fact to accept or reject the opinion of any expert *(see, People v Gilbert,* 103 AD2d 967). Given the relative qualifications of the experts who testified at bar, the manner in which the hearing court exercised that prerogative was entirely proper.

Based upon the foregoing, the hearing court concluded that the prosecution had met its burden of demonstrating, by clear and convincing evidence, that the defendants' ability to meaningfully cross-examine the victim was not substantially impaired as a result of the fact that she participated in one hypnotic session six months prior to the trial. We see no reason to disturb this determination.

The defendant Chamberlin's contention that his guilt was not proven beyond a reasonable doubt is without merit. Resolution of issues of reliability and credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury, which saw and heard the witnesses *(see, People v Gaimari,* 176 NY 84, 94). Its determination should be accorded great weight on appeal and should not be disturbed unless clearly unsupported by the record *(see, People v Garafolo,* 44 AD2d 86, 88). Upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

Contrary to defendant Chamberlin's assertion and the Peo-

ple's concession, the imposition of consecutive terms of imprisonment for the rape and sodomy committed by the defendant Tunstall while Chamberlin was holding a gun on the victim was not illegal *(see,* Penal Law § 70.25 [2]; *People v Brathwaite,* 63 NY2d 839; *People v King,* 115 AD2d 563). Neither was the imposition of a consecutive term of imprisonment for the sodomy committed by Chamberlin himself illegal *(see, People v Brathwaite, supra).* Finally, the sentence imposed upon Chamberlin does not constitute an abuse of discretion, and the interest of justice does not warrant a reduction of that sentence.

We have considered the remaining issues raised by the defendant Chamberlin and find them to be without merit *(see, People v Tunstall,* 97 AD2d 523, *mod* 63 NY2d 1, *supra).* Mollen, P. J., Mangano, Brown and Harwood, JJ., concur.